**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBSON LIMA RAMOS,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; PATRICIA HYDE, in her official capacity as Field Office Director, Enforcement & Removal Operations, U.S. Immigration and Customs Enforcement, Boston Field Office; ANTONE MONIZ, in his official capacity as Superintendent, Plymouth County Correctional Facility;<br><br>Respondents. | Civil Action No.: 1:26-cv-13257-AK |

**MEMORANDUM AND ORDER ON**
**PETITION FOR A WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Before the Court is Petitioner Robson Lima Ramos' ("Petitioner" or "Lima Ramos") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his immigration detention by U.S. Immigration and Customs Enforcement ("ICE"). This is Petitioner's second Petition. On January 19, 2026, the Court denied Petitioner's first habeas petition ("First Petition"), finding his detention, pursuant to a final order of removal, as lawful for the significant likelihood of his removal, and no merit in his claims of inadequate medical treatment in detention. Lima Ramos v. Bondi, No. 26-cv-10211-AK (D. Mass. July 10, 2026).

Similar to the First Petition, Lima Ramos challenges the legality of his post removal order detention and seeks immediate release for Respondents alleged continuing "failure to provide medically necessary specialist care" while in federal custody. [Dkt. 1 ¶ 1]. For the reasons below, Lima Ramos' Petition [Dkt. 1] is **DENIED WITHOUT PREJUDICE**. Accordingly, Petitioner's [Dkt. 3] Motion for Temporary Restraining Order is **DENIED AS MOOT**.

## I. BACKGROUND

The Court incorporates the detailed background from its Order denying the First Petition. Lima Ramos v. Bondi, No. 26-cv-10211-AK (D. Mass. July 10, 2026), Dkt. 36.

Briefly, Petitioner is a native and citizen of Brazil, who has resided in the United States for over 21 years. He entered the United States on March 26, 2005. On August 10, 2006, an immigration judge ordered him removed in-absentia. Petitioner is admittedly subject to a final order of removal. On January 11, 2026, ICE arrested him, and he has been detained since at the Plymouth County Correctional Facility ("PCCF").

On January 19, 2026, Petitioner filed his First Petition challenging his detention under 8 U.S.C. § 1231(a). Petitioner argued that his detention does not serve the regulatory purpose of securing his removal, and that he is facing inadequate medical treatment in detention. On March 16, 2026, Respondents filed a Notice of Intent to Transfer Petitioner to Effectuate Removal. Petitioner objected, stating he has filed a motion to reopen and rescind his in-absentia removal order with the immigration court. This automatically stayed his removal. Accordingly, Respondents withdrew the notice.

On April 2, 2026, the immigration judge denied Petitioner's motion to reopen and rescind, and the stay on removal thus expired. Respondents again filed a Notice of Intent to

Transfer Petitioner to Effectuate Removal on April 10, 2026. Petitioner objected, stating his emergency motion to stay removal and appeal against immigration court's decision are pending before the Board of Immigration Appeals ("BIA"). Upon Petitioner's request, the Court maintained the stay on his transfer and removal, until the BIA decides his motion to stay removal. On May 12, 2026, the BIA denied Petitioner's motion for stay of removal, while his appeal remained pending. On May 20, 2026, Petitioner amended his First Petition, bringing claims of inadequate medical treatment in detention.

On July 10, 2026, this Court denied the First Petition, finding Petitioner's detention was lawful as it was within the presumptively reasonable six-months duration, and, even otherwise, there was a "significant likelihood of the Petitioner's removal in the reasonably foreseeable future." [Id. at 5]. The Court further concluded that the Petitioner had not shown an "unmet serious medical need likely to result in future harm." [Id. at 6].

On July 15, 2026, Petitioner filed the instant Petition, arguing that his detention is now presumptively unreasonable for being beyond six-months with no significant likelihood of removal in the reasonably foreseeable future because Respondents have not identified any "concrete arrangement demonstrating that Petitioner's removal is actually scheduled." [Dkt. 1 ¶ 4]. Further, he alleges Respondents' continuing "failure to provide medically necessary specialist care" in federal custody. [Id. at ¶ 1].

Respondents oppose, arguing that Petitioner's detention, despite being presumptively unreasonable, is meant to secure his removal, which is significantly likely in reasonably foreseeable future, absent any stays. On July 29, 2026, Respondents also noticed the Court of their intent to transfer Petitioner to effectuate his removal. Further, Respondents submit that Petitioner has received adequate medical treatment; his condition is stable as attested in PCCF's

onsite provider's declaration, and he has had onsite evaluations by an optometrist who also referred him to Mass Eye and Ear for further evaluation.

## II. LEGAL STANDARD

Section 2241 confers jurisdiction on this Court to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the United States Constitution. 28 U.S.C. § 2241(c). The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)). The Court understands the Petition [Dkt. 1] challenges the legality of detention, and not the final removal order.

The Supreme Court has held that 8 U.S.C. § 1231(a)(6) authorizes detention only for the period reasonably necessary to accomplish removal. Zadvydas v. Davis, 533 U.S. 678, 689, 699–701 (2001). Six months constitutes the presumptively reasonable period of post-removal-order detention. Once six-months lapse, and the noncitizen detainee provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701.

## III. DISCUSSION

### A. Petitioner's Detention and Final Removal Order

The detention and removal of noncitizens with final orders of removal is governed by 8 U.S.C. § 1231 ("Section 1231"). Under Section 1231(a)(1)(A), "the Attorney General shall remove the alien from the United States within a period of 90 days," called the "removal period," following a final order of removal. 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the date the order of removal becomes administratively final. Id. § 1231(a)(1)(B)(i).

"During the removal period, detention is mandatory." Johnson v. Guzman Chavez, 594

U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)). After the removal period has passed, as in the instant case, detention is subject to a discretionary framework under Section 1231(a)(6), as opposed to Section 1231(a)(1)(A)'s mandatory framework. If a noncitizen subject to a final order of removal is not removed from the United States within the statutory ninety-day removal period, see 8 U.S.C. § 1231(a)(1)(A), ICE may either release the noncitizen under supervision, see 8 U.S.C. § 1231(a)(3), or continue to detain certain noncitizens under 8 U.S.C. § 1231(a)(6). See Johnson v. Guzman Chavez, 594 U.S. 523, 528-29 (2021).

Detention under Section 1231 cannot be indefinite. Zadvydas v. Davis, 533 U.S. at 689. Zadvydas limits the duration of post-removal-period detention "to a period reasonably necessary to bring about that alien's removal from the United States." Id. Federal courts are authorized to determine reasonableness, and the courts should do so "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." Id. at 699. To support courts in the reasonableness determination, the Supreme Court found detention of up to six months is presumptively reasonable under Section 1231. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." Id. at 699-700.

Here, Petitioner has been detained since January 11, 2026, beyond the presumptively reasonable six-month period. The Respondents, however, filed two notices of intent to transfer and effectuate removal during the pendency of the First Petition. The Petitioner's transfer and removal was then stayed by the court orders. Petitioner failed to show his removal was not likely prior to the six-month period while the Court stayed his transfer. Petitioner still has not shown

any bar to his removal. Now that the stays by immigration court are lifted, Petitioner fails to provide a good reason to believe that his removal is not reasonably foreseeable. On July 29, 2026, Respondents have again noticed their intent to transfer the Petitioner for removal [Dkt. 16], further indicating the likelihood of removal. Accordingly, the Petitioner has failed to show that his detention does not serve any regulatory purpose or provide the Court with good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Accordingly, Petitioner's challenge to his detention under 8 U.S.C. § 1231 fails.

**B. Petitioner's Claim of Inadequate Medical Treatment**

Similar to the First Petition, Petitioner re-alleges inadequate medical treatment during his detention. Petitioner particularly highlights Dr. Wheeler's affidavit, for his claim of the inadequate treatment of his medical conditions of "ocular toxoplasmosis affecting his right eye" and "elevated blood pressure." The Court reviewed the same affidavit in denying the First Petition. As detailed below, the Court finds no reason to differ from its prior opinion on the same record, in finding that the record does not show an "unmet serious medical need" likely to result in future harm." Bautista Guerrero v. Lyons, No. 25-cv-13525-BEM (D. Mass. 2025), Dkt. 15 (quoting Gomes v. US Dep't of Homeland Sec., Acting Sec'y, 460 F. Supp. 3d 132, 146 (D.N.H. 2020)).

Petitioner was admittedly provided with onsite medical examination on May 28, 2026 after he disclosed his medical condition for the first time to his counsel. The onsite provider started medication and referred Petitioner to an onsite optometrist. On May 29, an optometrist examined Petitioner and ordered him glasses. Based on Dr. Wheeler's affidavit dated June 12, 2026, Petitioner contends his condition requires urgent examination from an ophthalmologist instead of an optometrist, and thus his immediate release is warranted. Dr. Wheeler explained

that delay in examination could result in severe and permanent retinal damage, irreversible visual impairment, or blindness. Dr. Wheeler also recommended the emergency room at Mass Eye and Ear Infirmary for care from an ophthalmologist. Such restraint on his liberty preventing him from the necessary care, Petitioner argues, is unconstitutional and no longer reasonably relates to a legitimate civil detention purpose.

In response, Respondents have submitted PCCF's onsite medical provider's affidavit [Dkt. 17-1] to update the Court on Petitioner's condition and treatment. The affidavit states an on-site medical provider again examined Petitioner on July 21, 2026. [Id.]. During the evaluation, Petitioner stated he was originally diagnosed with toxoplasmosis in 2014 and the last time he followed up with a specialist was in 2022. [Id.]. Petitioner's condition also supposedly improved after the use of corrective lenses and medication. Petitioner also denied "any foreign body sensation, eye trauma, nausea, or vomiting." The provider performed vision screening as well, and reports that Petitioner "exhibited no alarming symptoms and no significant changes from his prior eye examination." On July 27, 2026, Petitioner also met with an optometrist, who reported that Petitioner's "vision is stable," and referred him to Mass Eye & Ear for further evaluation based on his prior history.

As determined previously, the above record does not show any unmet serious medical need likely to result in future harm. Accordingly, Petitioner's challenge to his detention based on inadequate medical treatment fails.

Because Petitioner has failed to show good reason to believe his removal is not significantly likely in the reasonably foreseeable future, and Respondents have noticed the intent to transfer Petitioner to effectuate his removal multiple times, the Court concludes that

Petitioner's detention is lawful pursuant to 8 U.S.C. §1231(a)(6) and there is a significant likelihood of removal in the reasonably foreseeable future.

## IV. CONCLUSION

For the foregoing reasons, Lima Ramos's Petition for Writ of Habeas Corpus [Dkt. 1] is hereby **DENIED WITHOUT PREJUDICE**. Accordingly, Petitioner's [Dkt. 3] Motion for Temporary Restraining Order is **DENIED AS MOOT**.

**SO ORDERED**.

Dated: October 9, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge